No. 22-1268

_____

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

_____

MARGARITO V. CANALES; BENJAMIN J. BARDZIK,

*Plaintiffs-Appellees,*

v.

CK SALES CO., LLC; LEPAGE BAKERIES; FLOWERS FOODS, INC.,

*Defendants-Appellants.*

_____

On Appeal from the United States District Court
for the District of Massachusetts, No. 1:21-cv-40065-ADB

_____

**BRIEF OF PLAINTIFFS-APPELLEES**

_____

Benjamin C. Rudolf (1st Cir. Bar No. 11454)
Sarah H. Varney (1st Cir. Bar No. 1204644)
Murphy & Rudolf, LLP
446 Main Street, Suite 1503
Worcester, MA 01608
P: (508) 425-6330
F: (508) 536-0834
brudolf@murphyrudolf.com
varney@murphyrudolf.com

*Counsel for Plaintiffs-Appellees*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................... iii

STATEMENT OF THE ISSUE ........................................................ 1

STATEMENT OF THE CASE .......................................................... 1

    I.    Relevant Facts ..................................................................... 1

    II.    Procedural History ............................................................ 4

SUMMARY OF THE ARGUMENT ................................................ 5

ARGUMENT ................................................................................... 8

    I.    Canales and Bardzik Engage in Interstate Commerce for Purposes of Section 1's Exemption. .................................... 8

        A.    Under Controlling Precedent, Canales and Bardzik are "Engaged in Interstate Commerce" Because they Drive Trucks Transporting Flowers' Goods in a Necessary Component of Flowers' Interstate Distribution System. ................................... 8

        B.    Canales and Bardzik Transport Goods as Part of a Continuous Interstate Journey Rather than as a Local Independent Service. ................................................. 15

        C.    This Court Should Adopt a Presumption that Truck Drivers Like Canales and Bardzik are Transportation Workers. .......... 18

i

**II.** **Canales and Bardzik are Transportation Workers Engaged in Interstate Commerce Regardless of their Employment Classification, Job Titles or Written Job Descriptions.** ................ **19**

    A.   Canales and Bardzik are Misclassified Employees, not Independent Business Owners. ................................................. 19

    B.   Even if Canales and Bardzik were Independent Contractors, they would Still be Transportation Workers Engaged in Interstate Commerce. .............................................................. 20

    C.   Canales and Bardzik are Engaged in Interstate Commerce Even to the Extent their Roles Involve Supervision and Management. ................................................................................ 24

**III.** **Whether Flowers is Technically Part of the "Transportation Industry" does not Matter for Purposes of Section 1's Exemption, but the Nature of its Business Further Demonstrates that Canales and Bardzik are Transportation Workers.** .................................... **27**

**CONCLUSION** ................................................. **31**

**SIGNATURE** .................................................. **32**

**CERTIFICATE OF COMPLIANCE WITH RULE 32(A)** ............................. **33**

**CERTIFICATE OF SERVICE** ........................................ **34**

# <u>TABLE OF AUTHORITIES</u>

## <u>Cases</u>

*Acosta v. Jani-King of Oklahoma, Inc.,*

905 F.3d 1156 (10th Cir. 2018) ................................................................ 23

*Archer v. Grubhub, Inc.*,

490 Mass. 352, 190 N.E.3d 1024 (2022) ......................................... 5, 6, 13

*Bissonnette v. LePage Bakeries Park St., LLC*,

33 F.4th 650 (2d Cir. 2022) .......................................................... 8, 27, 29

*Bissonnette v. LePage Bakeries Park St., LLC,*

No. 20-1681, 2022 WL 4457998 (2d Cir. September 26, 2022) ...................... 14, 30

*Carmona v. Domino's Pizza, LLC*,

21 F.4th 627 (9th Cir. 2021) ......................................................... 17, 18

*Carr v. Transam Trucking, Inc.*,

No. 3-07-CV-1944-BD, 2008 WL 1776435 (N.D. Tex. Apr. 14, 2008) ............... 18

*Chambers v. RDI Logistics, Inc.*,

476 Mass. 95, 65 N.E.3d 1 (2016) .......................................................... 24

*Circuit City Stores, Inc. v. Adams*,

532 U.S. 105 (2001) ............................................................ 8, 9, 10, 28, 29

**Cases (Continued)**

*Copperweld Corp. v. Indep. Tube Corp.*,
467 U.S. 752 (1984) .................................................................... 16

*Cunningham v. Lyft, Inc.*,
17 F.4th 244 (1st Cir. 2021) ...................................................... 6, 15, 16, 17

*DaSilva v. Border Transfer of MA, Inc.*,
377 F. Supp. 3d 74 (D. Mass. 2019) ......................................... 24

*Depianti v. Jan-Pro Franchising Int'l, Inc.*,
465 Mass. 607, 990 N.E.2d 1054 (2013) .................................. 24

*Doe v. Swift Transp. Co.*,
No. 2:10-CV-00899 JWS, 2017 WL 67521 (D. Ariz. Jan. 6, 2017) ...................... 22

*Fraga v. Premium Retail Servs., Inc.*,
No. CV 21-10751-WGY, 2022 WL 279847(D. Mass. Jan. 31, 2022) ................... 25

*Harden v. Roadway Package Sys.*,
249 F.3d 1137 (9th Cir. 2001) .................................................. 18

*In re Flowers Foods, Inc. Sec. Litig.*,
No. 7:16-CV-222-WLS, 2018 WL 1558558 (M.D. Ga. Mar. 23, 2018).... 15, 16, 30

## **Cases (Continued)**

*Int'l Broth. of Teamsters Loc. Union No. 50 v. Kienstra Precast, LLC*,

702 F.3d 954 (7th Cir. 2012) ................................................................... 29

*Kowalewski v. Samandarov*,

590 F. Supp. 2d 477 (S.D.N.Y. 2008) ...................................................... 18

*Lenz v. Yellow Transp., Inc.*,

431 F.3d 348 (8th Cir. 2005) ............................................................ 18, 25

*Magana v. DoorDash, Inc.*,

343 F.Supp. 3d 891 (N.D. Cal 2018)........................................................ 17

*New Prime Inc. v. Oliveira*,

139 S. Ct. 532 (2019)................................................................................ 20

*Oliveira v. New Prime, Inc.*,

857 F.3d 7 (1st Cir. 2017)......................................................................... 20

*Palcko v. Airborne Express*,

372 F.3d 588 (3d Cir. 2004) ............................................................. 18, 25

*Philadelphia & Reading Railway Co. v. Hancock*,

253 U.S. 284 (1920)................................................................................. 10

*Reyes v. Garland*,

26 F.4th 516 (5th Cir. 2022) .................................................................... 21

## Cases (Continued)

*Rittmann v. Amazon.com, Inc.*,
383 F.Supp.3d 1196 (2019) ...................................................... 12, 13, 14, 17, 18, 29

*Rosinbaum v. Flowers Foods, Inc.*,
238 F. Supp. 3d 738 (E.D.N.C. 2017) .................................................... 23

*Schwann v. FedEx Ground Package Sys.*, Inc.,
813 F.3d 429 (1st Cir. 2016)..................................................... 20

*Seaboard Air Line Railway v. Moore*,
228 U.S. 433 (1913)...................................................... 10

*Singh v. Uber Techs. Inc.*,
939 F.3d 210 (3d Cir. 2019) ..................................................... 26

*Smith v. Allstate Power Vac, Inc.*,
482 F. Supp. 3d 40 (E.D.N.Y. 2020) .................................................... 26

*Southwest Airlines Co. v. Saxon*,
142 S. Ct. 1783 (2022).............. 5, 7, 8, 10, 11, 13, 15, 19, 24, 25, 26, 27, 28, 29, 31

*Tidd vs. Adecco USA, Inc.*,
No. CIV.A. 07-11214-GAO, 2008 WL 4286512 (D. Mass. Sept. 17, 2008) ......... 19

*United States v. Yellow Cab Co.*,
332 U.S. 218 (1947)............................................................... 16

**Cases (Continued)**

*Veliz v. Cintas Corp.*,
No. C 03–1180 SBA, 2004 WL 2452851 (N.D. Cal. Apr. 5, 2014)....................... 18


*Waithaka v. Amazon.com, Inc.*,
966 F.3d 10 (1st Cir. 2020)........... 5, 9, 10, 11, 12, 13, 14, 15, 17, 18, 28, 29, 30, 31


*Zamora v. Swift Transp. Corp.*,
No. EP-07-CA-00400-KC, 2008 WL 2369769 (W.D. Tex. June 3, 2008) ............ 26

**Statutes**

9 U.S.C. § 1...................................................................................... 8, 9, 11
49 U.S.C. § 13102(14) ............................................................................ 19
M.G.L. c. 149 § 148.................................................................................. 3
M.G.L. c. 149 § 148B ............................................................................... 3
M.G.L. c. 151 § 1..................................................................................... 3
M.G.L. c. 151 § 1A ................................................................................... 3

## STATEMENT OF THE ISSUE

Whether the District Court correctly concluded that Plaintiff-Appellees Margarito Canales ("Canales") and Benjamin Bardzik ("Bardzik"), whose work for Flowers Foods, Inc. (including its subsidiaries CK Sales, LLC and Lepage Bakeries Park St., LLC, collectively "Flowers") consists of transporting Flowers' goods as part of its interstate distribution system, qualify as "transportation workers" under Section 1 of the Federal Arbitration Act (FAA).

## STATEMENT OF THE CASE

### I.    Relevant Facts

Flowers is a Georgia-based, publicly held corporation that operates an interstate network of distributors for its "direct store delivery" service. Corporate Disclosure Statement, Flowers' brief; App. 17-18 ¶¶ 1-3.  Canales and Bardzik transport baked goods produced by Flowers in Maine to Flowers' customer stores in Massachusetts as part of its interstate distribution system. *Id*. at 17-18 ¶¶ 2-6; 132-133 ¶¶ 2 and 10, 135-136 ¶¶ 2 and 10.  The goods are transported from Maine to Flowers' warehouse in Massachusetts, where Canales and Bardzik pick them up for distribution to stores along distinct routes or "territories" designated by Flowers. *Id*. at 6 ¶ 9, 17-18 ¶¶ 2-3, 35 ¶ 2.5, 64 ¶ 2.5, 95 ¶ 2.5.  They each spend at least fifty hours per week driving trucks and the remainder of their working time, no more than an additional thirty hours per week, supervising other drivers doing

1

the same. *Id*. at 133 ¶¶ 4-6 and 136 ¶¶ 4-6.  They work solely for Flowers and distribute baked goods solely to Flowers' customer stores. *Id*. at 133-134 ¶¶ 12 and 15, 136-137 ¶¶ 12 and 15.

Prior to April 2018, Canales and Bardzik each worked as employees of a temporary staffing agency delivering Flowers' baked goods. *Id*. at 6 ¶¶ 12-13, 133 ¶ 11 and 136 ¶ 11.  Towards the end of 2017, Flowers informed Canales and Bardzik that their employment would be terminated unless they wished to purchase their delivery route and become "independent distributors." *Id*. at 7 ¶¶ 14-15. Flowers also falsely insisted that Massachusetts law required "independent distributors" to purchase a minimum of three routes and made specific representations to Canales and Bardzik concerning the profitability of certain routes. *Id*. at 7 ¶¶ 16-18.  Canales and Bardzik relied on Flowers' promises and representations and complied with Flowers' requirements to establish a corporate entity (T&B Dough Boys Inc., or "T&B") and (through that entity) execute written "Distributor Agreements" prepared by Flowers. *Id*. at 7 ¶¶ 19-20.

Although Canales and Bardzik were enthusiastic about the prospect of operating their own business, they discovered that Flowers' scheme severely restricts their ability to operate independently.  Despite Flowers' efforts to perpetuate the fiction of "independent distributors," and despite what Canales and Bardzik were led to believe, the actual circumstances of the work reflect all the

2

indicia of employment relationships under Massachusetts law.  Both by the terms of the written contracts and in practice, Canales and Bardzik lack any meaningful control or authority over the quantity or price of the baked goods being distributed to Flowers' customers; the schedules for the deliveries; and the customer stores included on the routes. *Id.* at 7-9 ¶¶ 20 and 28-34, 37 ¶ 3.1, 38 ¶ 5.1, 41-42 ¶¶ 9.1-10.2, 66 ¶ 3.1, 67 ¶ 5.1, 71-72 ¶¶ 9.1-10.2, 97 ¶ 3.1, 98 ¶ 5.1, 101-103 ¶¶ 9.1-10.2, and 108 ¶ 17.3, 133-134 ¶¶ 13-15, and 136-137 ¶¶ 13-15.  Both by the terms of the written contracts and in practice, Flowers has retained authority to discipline Canales and Bardzik and otherwise compel their compliance with all of their policies and procedures and has prevented them from exercising any independent business judgment concerning the distribution of its baked goods. *Id*.

Unable to make a sufficient profit to justify the hours they work, and unable to sell their "distributorship" without Flowers' permission, Canales and Bardzik brought this action for Flowers' violations of the Massachusetts Wage Act, M.G.L. c. 149 §§ 148 and 148B and the Massachusetts Minimum Fair Wage Law, M.G.L. c. 151 §§ 1, 1A, as well as unjust enrichment; fraud/misrepresentation; breach of contract; and breach of the implied covenant of good faith and fair dealing. *Id*. at 10-13.

## II.    <u>**Procedural History**</u>

Canales and Bardzik initiated this case on June 17, 2021. *App Ct*. at 2.

Flowers responded with a motion asking the District Court to dismiss the case or to

stay it and compel arbitration pursuant to the FAA. *Id*.  Canales and Bardzik

opposed Flowers' motion and, with leave of Court, supplemented the record with

affidavits describing their work for Flowers. *Id*. at 3 and 132-137.

On March 20, 2022, the District Court issued an order denying Flowers'

motion with leave to file a renewed motion to dismiss. *Id*. at 3; Addendum to

Flowers' brief.  Basing its analysis on the work they actually perform, the District

Court held that because Canales and Bardzik qualify as transportation workers for

purposes of Section 1 of the FAA, they could not be compelled to arbitrate their

claims under the FAA. Add. 14.  Further concluding that the parties had not

comprehensively briefed the issue of whether arbitration could be compelled under

Massachusetts law, the District Court offered Flowers the opportunity to file a

renewed motion to dismiss exclusively addressing the issue of arbitration under

state law. *Id*. at 15.  Flowers declined that opportunity, instead initiating this appeal

limited to the issue of Section 1's exemption. App. 4.

4

## SUMMARY OF THE ARGUMENT

**I.**      Under controlling precedents recently established by the Supreme Court and this Court, Canales and Bardzik are transportation workers for purposes of Section 1 of the FAA because the record shows unambiguously that they drive trucks delivering Flowers' baked goods in a continuous stream of interstate commerce.  Workers who play direct and necessary roles in interstate commerce qualify for Section 1's exemption even if they do not themselves cross state lines. *Southwest Airlines Co. v. Saxon,* 142 S. Ct. 1783, 1790 (2022); *Waithaka v. Amazon.com, Inc.*, 966 F.3d 10, 18 (1st Cir. 2020).  Canales and Bardzik play such roles.

**A.**      Like the Amazon drivers in *Waithaka*, Canales and Bardzik transport Flowers' goods in a necessary last leg of an interstate journey.  That journey starts with the goods' production outside Massachusetts and their delivery to Flowers' warehouse in Massachusetts, where they are picked up by Canales and Bardzik for delivery to Flowers' customer stores.  Without the work Canales and Bardzik perform, Flowers' goods would not reach the destination for which they were intended at the time of production.

**B.**      Because they transport Flowers' goods as part of a continuous interstate journey, Canales and Bardzik do not provide a "local independent service" like the drivers in *Cunningham v. Lyft, Inc.*, 17 F.4th 244 (1st Cir.

5

2021); *Wallace v. Grubhub Holdings, Inc.*, 970 F.3d 798 (7th Cir. 2020); or

*Archer v. Grubhub, Inc.*, 490 Mass. 352, 360, 190 N.E.3d 1024, 1031 (2022).

Unlike those drivers, Canales and Bardzik transport interstate goods exclusively

in furtherance of a relationship between the original producer of the goods

(Flowers) and its customer stores. Also unlike those drivers, Canales and

Bardzik always transport the goods to the same customer stores along the same

defined routes.

      **C.**      This Court should adopt a presumption that truck drivers like

Canales and Bardzik qualify as transportation workers for Section 1's

exemption. Many courts have essentially assumed that truck drivers are

transportation workers. Flowers concedes that Canales and Bardzik drive

trucks in interstate commerce for purposes of the "motor carrier" exemption to

the Fair Labor Standards Act, and such drivers should be deemed transportation

workers exempt under Section 1.

    **II.**    Because the focus must be on the work actually performed, such

factors as employment classification, written policies and agreements, and job

titles do not control whether workers are transportation workers exempt under

Section 1. Regardless of how Flowers characterizes its relationship with Canales

and Bardzik, they perform work for Flowers transporting its goods as part of its

interstate distribution system.

6

**A.**    Canales and Bardzik are misclassified employees of Flowers rather than "independent business owners."  But the issue of their classification is not before the Court on appeal, and the Court should decline to resolve the issue preemptively by adopting Flowers' preferred narrative.

**B.**    Even if Canales and Bardzik were independent contractors, they would still be transportation workers because the Supreme Court and this Court have made clear that classification status does not matter for purposes of Section 1's exemption.  A "contract of employment" under Section 1 is simply an agreement to perform work.  Both the text of the "Distributor Agreements" and the reality of the work Canales and Bardzik perform reflect an agreement by them individually to distribute Flowers' goods.

**C.**    That Canales and Bardzik have supervisory duties does not change their status as transportation workers.  The Supreme Court held Saxon to be a transportation worker even though she was supposed to perform exclusively supervisory tasks, based solely on her contention that she "frequently" handled goods.  Canales and Bardzik drive trucks transporting Flowers' goods the large majority of their working time, spending much less time supervising.

**III.**    It does not matter to what industry Flowers might technically belong. The "transportation industry" analysis applied by the Second Circuit in *Bissonnette*

7

*v. LePage Bakeries Park St., LLC*, 33 F.4th 650 (2d Cir. 2022)  was explicitly

rejected by the Supreme Court in *Saxon*.  Such an analysis ignores widespread

precedent, the text of Section 1, and the practical reality of the work performed.

To the extent it remains an important factor, the nature of Flowers' business only

underscores the necessary role Canales and Bardzik play in interstate commerce.

## ARGUMENT

### I.    Canales and Bardzik Engage in Interstate Commerce for Purposes of Section 1's Exemption.

### A.    Under Controlling Precedent, Canales and Bardzik are "Engaged in Interstate Commerce" Because they Drive Trucks Transporting Flowers' Goods in a Necessary Component of Flowers' Interstate Distribution System.

The FAA exempts from its application "seamen, railroad employees, or any

other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1

("Section 1").  The Supreme Court has referred to the clause that describes "any

other class of workers" as "a residual clause" exempting "transportation workers."

*Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 115, 119 (2001).  The Supreme

Court has declined to adopt a fixed definition of "transportation worker," instead

emphasizing that application of the residual clause depends simply upon whether

workers "play a direct and 'necessary role in the free flow of goods' across

borders." *Saxon,* 142 S. Ct. at 1790.  Canales and Bardzik play such a role because

8

without their work, Flowers' baked goods would not complete their interstate journey from Flowers' production facilities in Maine to its customer stores in Massachusetts.

This is not a novel issue before this Court. Two years ago, this Court explained that the residual clause turns on the definition of "interstate commerce" when read in conjunction with the words that immediately precede that phrase: "engaged in." *Waithaka*, 966 F.3d at 24. Workers may be engaged in interstate commerce "regardless of whether the workers themselves physically cross state lines." *Id*. at 26. Drivers working for Amazon, transporting goods "on the final legs of interstate journeys," are "transportation workers" for purpose of Section 1's exemption because even if the drivers do not cross state lines themselves, they are clearly working "within the flow of interstate commerce." *Id*., citing *Circuit City*, 532 U.S. at 118.

This Court's examination of the FAA's language in *Waithaka* was informed by the Federal Employers' Liability Act (FELA), which was passed in 1908 and uses "language nearly identical" to § 1 of the FAA, and Supreme Court decisions interpreting the FELA's language. *Id*. at 19. The FELA cases made clear that "a worker transporting goods that had come from out of state or that were destined for out-of-state locations was 'engaged in interstate' commerce" even if the worker's role in transporting the goods occurred entirely within a single state. *Id*., citing

9

*Seaboard Air Line Railway v. Moore*, 228 U.S. 433 (1913) and *Philadelphia & Reading Railway Co. v. Hancock*, 253 U.S. 284 (1920). This interpretation is entirely consistent with the Supreme Court's "focus on 'the flow of interstate commerce'" in its *Circuit City* decision interpreting Section 1 of the FAA. *Id.* at 22; *Circuit City*, 532 U.S. at 118.

The Supreme Court denied Amazon's petition for certiorari challenging this Court's decision in *Waithaka* and in June of this year issued a decision endorsing the same approach taken by this Court in that case. *Saxon*, 141 S. Ct. 1783. In *Saxon*, the Supreme Court considered whether an airline's "ramp supervisor" whose work "frequently" consisted of handling goods at a single in-state location, was a transportation worker engaged in interstate commerce for purposes of Section 1's exemption. *Id.* at 1787. The Supreme Court rejected Saxon's proposed industrywide analysis and held that the focus of the FAA generally, and therefore of the Section 1 exemption specifically, must be the actual work performed. *Id.* at 1788. Echoing the logic employed in *Waithaka*, the Supreme Court held that the phrase "engaged in" must be read together with "interstate commerce," such that the residual clause of Section 1's exemption applies to workers if they are "engaged in foreign or interstate commerce." *Id.* at 1789.

To be "engaged" in interstate commerce means "to be 'occupied,' 'employed,' or 'involved' in it." *Id.* Airline employees unloading cargo are, "as a

10

practical matter, part of the interstate transportation of goods" and therefore
exempted under Section 1, even though they themselves do not cross state lines. *Id.*
In *Waithaka*, this Court declined to make workers "crossing state lines" the
"touchstone" of the residual clause's application. *Waithaka*, 966 F.3d at 26.  In
*Saxon*, the Supreme Court did the same.

Like the last-leg drivers in *Waithaka*, Canales and Bardzik handle and
transport goods traveling in interstate commerce. App. 132-133, 135-136.  This
Court's decision in *Waithaka*, and the analytical approach endorsed by the
Supreme Court in *Saxon*, thus control the outcome in this case.  Applying that
controlling precedent to the undisputed facts here, Canales and Bardzik plainly
transport goods "within the flow of interstate commerce" and are "engaged in
interstate commerce" for purposes of Section 1's exemption.

Flowers' assertion that Canales and Bardzik "play no role—much less a
primary role—in the movement of goods or people beyond state boundaries"
requires total disregard of the realities of their work. Flowers' brief at 20.  Flowers
is a Georgia-based, publicly held corporation that operates an interstate network of
distributors for its "direct store delivery" service. Corporate Disclosure Statement,
Flowers' brief; App. 17-18 ¶¶ 1-3.  Within Flowers' "New England Region,"
Lepage Bakeries Park Street, LLC ("Lepage"), one of Flowers' subsidiaries, bakes
bread for Flowers in Maine, and CK Sales Co., LLC, another Flowers subsidiary,

11

"is in the business of contracting with" distributors such as Canales and Bardzik.
App. 21. Flowers' baked goods are brought from Maine to its warehouse in North
Reading, Massachusetts, the "base" for the routes Canales and Bardzik drive. App.
17-18, ¶¶ 2 and 5. Canales and Bardzik pick up the baked goods there and
transport them to Flowers' specified customer stores along the routes delineated by
Flowers. *Id*. at 6 ¶ 9, 17-18 ¶¶ 2-3, 35 ¶ 2.5, 64 ¶ 2.5, 95 ¶ 2.5, 133-134 ¶¶ 12 and
15, 136-137 ¶¶ 12 and 15.

Like the Amazon drivers in *Waithaka*, Canales and Bardzik are
"indispensable parts of [Flowers'] distribution system," which "transports goods in
interstate commerce." *Waithaka*, 404 F.Supp. 3d 335, 343 (D. Mass. 2019). A
strike by drivers such as Canales and Bardzik would "cause a ripple effect in
interstate commerce," as much as a strike by cross-border transportation workers,
"because goods travelling interstate would still not make it to their final
destination." *Id*., quoting *Rittmann v. Amazon.com, Inc.*, 383 F.Supp.3d 1196,
1201-1202 (2019), aff'd., *Rittmann v. Amazon.com, Inc.*, 971 F.3d 904 (2020).
Flowers claims Canales and Bardzik "purchase" the baked goods from it to sell to
the stores, but the contracts Flowers wrote and required Canales and Bardzik to
sign provide that Canales and Bardzik "[do] not acquire any proprietary or
ownership rights to such [products]." App. 35 ¶ 2.3, 64 ¶ 2.3, and 95 ¶ 2.3. The
stores to which Canales and Bardzik distribute Flowers' goods are along routes

(referred to as "territories") delineated by Flowers, and Flowers' goods are produced for those stores. *Id*. at 35 ¶ 2.5, 38 ¶ 5.1, 64, ¶ 2.5, 67 ¶ 5.1, 95, ¶ 2.5.

For Section 1, the reach of interstate commerce in goods depends upon the goods' intended destination at the moment they enter "the flow of interstate commerce." *Archer*, 490 Mass. at 360, 190 N.E.3d at 1031 (contrasting the goods carried by the Amazon drivers in *Waithaka* with food deliveries by Grubhub drivers). From the moment Flowers' goods enter the "flow of interstate commerce," they are destined for the customer stores to whom Canales and Bardzik deliver. *Id.* Like the "last leg" of the trips taken by the goods in *Waithaka* and *Rittmann*, the trips taken by Canales and Bardzik from Flowers' warehouse in Massachusetts to its customer stores are "part of the ongoing and continuous nature of the interstate transit of the good to the customer [stores] who ordered it." *Archer*, 490 Mass. at 360, 190 N.E. 3d at 1032, citing *Waithaka*, 966 F.3d at 20-21. Canales and Bardzik thus play an "integral part" of the interstate transportation of those goods.

Unable to distinguish this case from *Waithaka*, Flowers attempts to cast doubt on its holding by suggesting that the Supreme Court somehow charted a different course for Section 1 analysis in *Saxon*. But nothing about *Saxon* conflicts with *Waithaka*. Footnote 2 of Justice Thomas' opinion merely acknowledges that "the answer will not always be so plain" in cases involving work "further removed

13

from the channels of interstate commerce." *Saxon*, 142 S. Ct. at 1789 n. 2.  The

footnote suggests as examples *Rittmann*, the "last leg" case from the Ninth Circuit,

and *Wallace*, the Grubhub case from the Seventh Circuit, without providing any

further comment on how the Supreme Court would resolve such cases. *Id*., citing

*Wallace*, 970 F.3d 798 and *Rittmann*, 971 F.3d 904.  Indeed, the Supreme Court

declined opportunities to review *Waithaka* and *Rittmann*. 141 S. Ct. 2794 (Mem);

141 S. Ct. 1374 (Mem).  *Saxon* not only fundamentally confirmed this Court's

analytical approach in *Waithaka*, but also confirmed (as *Waithaka* had) that

workers who do not themselves cross state lines may nonetheless engage in

interstate commerce for purposes of Section 1's exemption.

If anything, though, Canales and Bardzik are even more closely connected to

the stream of interstate commerce than the Amazon drivers in *Waithaka* and

*Rittmann*.  Whereas the Amazon drivers deliver products to consumers' homes,

Canales and Bardzik deliver them to stores that are marketplaces of myriad

products many of which come from out of state. See *Bissonnette v. LePage*

*Bakeries Park St., LLC*, No. 20-1681, 2022 WL 4457998 (2d Cir. September 26,

2022) (Pooler, J., dissenting) (noting "[t]he plaintiffs are commercial truck drivers

who deliver the defendants' packaged baked goods to supermarkets and other retail

outlets.").  They handle goods in the stream of interstate commerce before the last

leg taken by the goods – the trip from the stores to the consumers' individual

homes.  Because they are even closer in time and distance to the baked goods'

origins, there should be no question that Canales and Bardzik are at least "as a

practical matter, part of the interstate transportation of goods." *Saxon*, 142 S. Ct. at

1789.

### B.    Canales and Bardzik Transport Goods as Part of a Continuous Interstate Journey Rather than as a Local Independent Service.

Flowers attempts to distinguish Canales and Bardzik from the "last leg"

drivers in *Waithaka* by suggesting that they provide an "independent local service"

like the drivers in *Cunningham*, 17 F.4th 244.  This argument rests partly on the

legal fiction Flowers perpetrates, that Canales and Bardzik are independent

business owners rather than employees, which goes to the heart of the parties'

dispute but is not at issue in this appeal.  It also ignores the reality of Flowers'

interstate distribution system.

The Distributor Agreements refer to the obligation "to maximize the sale of

Authorized Products to those Outlets in the Territory for which such Authorized

products have been produced." App. 38 ¶ 5.1, 67 ¶ 5.1, and 98 ¶ 5.1.  In other

words, Flowers produces its goods not for Canales and Bardzik to sell but rather

for the stores to which Canales and Bardzik distribute Flowers' goods. *Id.; see*

*also, e.g., In re Flowers Foods, Inc. Sec. Litig.*, No. 7:16-CV-222 (WLS), 2018

WL 1558558 at *2 (M.D. Ga. Mar. 23, 2018) (describing Flowers' business in the

context of litigation brought by investors alleging Flowers defrauded its

15

shareholders by misrepresenting the risk posed by misclassification lawsuits).  The stores are truly Flowers' customers, not those of Canales and Bardzik. *Id*.  Even while the Distributor Agreements attempt to portray Canales and Bardzik as salesmen, they reserve to Flowers the right to communicate directly with the stores and to directly receive payment from all of the "chain and other major accounts." App. 8 ¶ 29, 40 ¶ 8.4, 70 ¶ 8.4, and 101 ¶ 8.4.

Whereas the Lyft drivers do not contract with the airlines at all, Canales and Bardzik have contracted with Flowers to distribute its goods as part of the goods' continuous trip from their point of origin to Flowers' customers.  Moreover, whereas the Lyft drivers regularly transport all kinds of passengers from a variety of destinations, Canales and Bardzik work only for Flowers, transporting only its goods to the same destinations along the same prescribed routes.  Canales and Bardzik are very much like "the exclusive provider of 'between station transportation'" contrasted in *Cunningham* with the Lyft drivers. *Cunningham*, 17 F.4th at 250-251, citing *United States v. Yellow Cab Co.*, 332 U.S. 218 (1947), overruled on other grounds by *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 759–60, 777 (1984).  They do not at all resemble the "taxi cabs in the course of their normal local taxi service throughout Chicago" described by the Supreme Court in *Yellow Cab Co. Id.* citing *Yellow Cab Co.*, 332 U.S. at 230.

Contrary to Flowers' assertion, the "interstate" leg of distribution does not end the moment Flowers' products cross the Massachusetts border. Instead, the reach of interstate commerce is defined by the intended destination of products when they enter its flow. *Waithaka*, 966 F.3d at 22; *see also Carmona v. Domino's Pizza, LLC*, 21 F.4th 627, 629-30 (9th Cir. 2021) (local deliveries of nationally distributed goods from in-state "supply center" to in-state franchise locations) and *Rittmann*, 971 F.3d at 915-16. When Flowers produces the goods Canales and Bardzik transport, they are intended for Flowers' stores in Massachusetts.

Where courts have declined to include certain activity as "engagement in interstate commerce," such activity has been confined to transportation of goods and people after they have reached their final interstate destination. In the case of drivers who deliver meals ordered by individual customers, the ingredients from out of state have already reached their intended destination – the restaurant from which the customers order the food. Delivery drivers for Grubhub perform a function otherwise performed by the consumers themselves. *See, e.g., Wallace*, 970 F.3d 798, and *Magana v. DoorDash, Inc.*, 343 F.Supp. 891 (N.D. Cal. 2018). Similarly, Lyft drivers transport passengers who have many transportation choices, including driving themselves, to reach whatever destination they choose. *See Cunningham*, 17 F.4th at 250-251.

17

By contrast, wholly intrastate activity has been held to be a part of interstate commerce when it forms an essential leg of the "continuous interstate transportation" of goods to their intended destinations. *Waithaka*, 966 F.3d at 26; *Rittmann*, 971 F.3d at 915-16; see also *Carmona*, 21 F.4th at 629-30.  The cases essentially create a divide between local "delivery drivers," separate from interstate commerce, and "distributors," carrying goods as an essential local leg of the greater flow of interstate commerce.  Flowers' food products enter the flow of interstate commerce with the intended destination of their customer stores, and by Flowers' own definition, Canales and Bardzik serve as distributors within their wide-reaching interstate distribution system.

### C.    This Court Should Adopt a Presumption that Truck Drivers Like Canales and Bardzik are Transportation Workers.

Truck drivers represent the "one area where a consensus [about who constitutes a transportation worker] has emerged." *Waithaka*, 404 F. Supp. 3d at 340–41, citing *Kowalewski v. Samandarov*, 590 F. Supp. 2d 477 (S.D.N.Y. 2008); *Lenz v. Yellow Transp., Inc.*, 431 F.3d 348, 351 (8th Cir. 2005); *Palcko v. Airborne Express*, 372 F.3d 588, 593-94 (3d Cir. 2004); *Harden v. Roadway Package Sys.*, 249 F.3d 1137, 1140 (9th Cir. 2001); *Carr v. Transam Trucking, Inc.*, No. 3-07-CV-1944-BD, 2008 WL 1776435, at *2 (N.D. Tex. Apr. 14, 2008); and *Veliz v. Cintas Corp.*, No. C 03–1180 SBA, 2004 WL 2452851, at *5 (N.D. Cal. Apr. 5, 2014).  Even while arguing that Canales and Bardzik do not engage in interstate

18

commerce for purposes of Section 1's exemption, Flowers asserts that Canales and Bardzik *are* engaged in interstate commerce for purposes of the "motor carrier" exemption to the Fair Labor Standards Act (FLSA), which applies to employees of companies who use trucks weighing at least 10,001 pounds.[1] *See* Flowers' brief at n. 4; *see also, e.g.*, *Tidd vs. Adecco USA, Inc.*, D. Mass., No. CIV.A. 07-11214-GAO (Sept. 17, 2008), citing 49 U.S.C. § 13102(14).  The use of large commercial trucks by Canales and Bardzik is a quintessential marker of their participation in "the channels of interstate commerce," to use the Supreme Court's phrase in *Saxon*, 142 S. Ct. at 1790.  This Court should adopt a presumption that truck drivers who qualify for the "motor carrier exemption" to the FLSA are engaged in interstate commerce for purposes of Section 1's exemption.

## II. Canales and Bardzik are Transportation Workers Engaged in Interstate Commerce Regardless of their Employment Classification, Job Titles or Written Job Descriptions.

### A. Canales and Bardzik are Misclassified Employees, not Independent Business Owners.

This case arises from claims by Canales and Bardzik that Flowers violated Massachusetts law by misclassifying them as independent contractors when they are properly classified as employees.  Flowers would like this Court to

_____

[1] Canales and Bardzik concede that the "motor carrier" exemption to the FLSA applies to them solely for purposes of this appeal, and reserve the right to litigate that question when it is appropriate to do so.

preemptively resolve that issue in its favor by adopting the legal fiction that Canales and Bardzik are independent business owners.  However, the record includes affidavits Canales and Bardzik submitted to the District Court verifying the Complaint, and the Complaint delineates the factual basis on which they are properly classified as employees under Massachusetts law. App., 5-10, 128 ¶ 6, and 130 ¶ 4.  In any event, the classification issue is not before this Court.  On the contrary, Flowers has presumably sought to compel arbitration because it would prefer an arbitrator to make the decision.  The District Court did not decide or even analyze the issue, and even if this Court had appellate jurisdiction over the issue, it should not be decided now. *Schwann v. FedEx Ground Package Sys.*, Inc., 813 F.3d 429, 442 (1st Cir. 2016).

> **B.    Even if Canales and Bardzik were Independent Contractors, they would Still be Transportation Workers Engaged in Interstate Commerce.**

> 1.    Employment Classification does not Matter for Section 1 Analysis.

In *New Prime Inc. v. Oliveira*, the parties assumed for purposes of appeal that the plaintiff was an independent contractor rather than an employee. 139 S. Ct. 532, 539 (2019).  Both this Court and the Supreme Court concluded that Section 1's exemption applied equally to independent contractors who were transportation workers as it did to individuals legally classified as employees. *Id., aff'g Oliveira v. New Prime, Inc.*, 857 F.3d 7 (2017).  While "lawyerly ears" might believe

20

"contracts of employment" are "only agreements between employers and employees," that "modern intuition" does not comport with the meaning of the term. *Id.* "[A] contract of employment [means] nothing more than an agreement to perform work," and Section 1's protections therefore "capture any contract for the performance of work by workers." *Id.* The issue of whether Canales and Bardzik are employees or independent contractors does not matter for this appeal.

2. <u>Canales and Bardzik Have Contracts of Employment with Flowers for Purposes of Section 1's Exemption Despite their Incorporation.</u>

Flowers argues, for the first time on appeal, that Canales and Bardzik have no contract of employment with it or its subsidiaries because the operative contract is between Flowers and T&B, the corporation Canales and Bardzik were required to establish. The Court should not consider this argument because Flowers failed to raise it before the District Court. *Reyes v. Garland*, 26 F.4th 516, 519 (1st Cir. 2022). In any case, the issue has no significance for purposes of Section 1's exemption because either the Distributor Agreements constitute a "contract of employment" or Canales and Bardzik have separately agreed to provide work to Flowers and do so as a matter of practical reality. App. 56-57, 133-134 ¶¶ 12-15 and 136-137 ¶¶ 12-15. They work only for Flowers, distributing only Flowers' products. *Id.* at 133-134 ¶¶ 12-15 and 136-137 ¶¶ 12-15.

Flowers suggests that T&B agreed to perform work, but not Canales and Bardzik individually. Yet the text of the "Personal Guarantees" upon which Flowers relies for its position that Canales and Bardzik must be forced to arbitrate their claims clearly requires an agreement by Canales and Bardzik *individually* to perform work. The Personal Guarantees do not merely require Canales and Bardzik to act as sureties for their allegedly independent business, but require that they "upon [Flowers'] demand. . . ensure the timely and complete performance of . . . each and every obligation and duty imposed on [T&B] by the Distributor Agreement." *Id*. at 56-57. Whatever purported freedom Canales and Bardzik might have to authorize others to do this work, they are ultimately responsible for seeing the work done and supervising any other drivers. The work performed is the distribution of Flowers products, not—as Flowers suggests—merely an "opportunity" for Canales and Bardzik to work.

Not only do the Personal Guarantees require Canales and Bardzik to perform work, but the main text of the Distributor Agreements is also consistent with an employment relationship. *See Doe v. Swift Transp. Co.*, No. 2:10-CV-00899 JWS, 2017 WL 67521 (D. Ariz. Jan. 6, 2017) (on remand from the Ninth Circuit, considering whether "contractor operating agreements" signed by plaintiff truck drivers were "contracts of employment" exempt under Section 1). The Distributor Agreements contain multiple factors "indicative of employee status," including

22

"term[s] of infinite duration," the right of Flowers to terminate the agreement, and controls over the way Canales and Bardzik perform their work.[2] *Compare id*. at *5–6 with App. 37 ¶ 3.1, 38 ¶ 5.1, 41-42 ¶¶ 9.1-10.2, 66 ¶ 3.1, 67 ¶ 5.1, 71-72 ¶¶ 9.1-10.2, 97 ¶ 3.1, 98 ¶ 5.1, 101-103 ¶¶ 9.1-10.2, and 108 ¶ 17.3.

Canales and Bardzik previously drove trucks for Flowers through a temporary agency, and still spend most of their time driving trucks. App. 132-133 ¶¶ 2-6 and 135-136 ¶¶ 2-6.  Just as they did before, Canales and Bardzik drive trucks to Flowers' warehouse, load Flowers' products, deliver to locations specified by Flowers along routes delineated by Flowers, and place Flowers' products in stores according to Flowers' requirements. *Id*. at 6, ¶ 9; 35, ¶ 2.5; 64, ¶ 2.5; 95, ¶ 2.5, 132-133 ¶¶ 2-6 and 135-136 ¶¶ 2-6.  The "economic realities" of the work Canales and Bardzik perform are that they are doing the work regardless of corporate formalities. *Rosinbaum v. Flowers Foods, Inc.*, 238 F. Supp. 3d 738, 743 (E.D.N.C. 2017) (applying "economic realities" test in the context of class certification of Flowers' distributors); *see also, e.g., Acosta v. Jani-King of*

---

[2] The restrictions on the supposed independence Canales and Bardzik have include requirements that they use (and pay for) Flowers' "proprietary administrative services" for all sales and for accepting automated "adds" and "cuts" to delivery orders (¶¶ 10.1-2); that they distribute only products authorized by Flowers (¶ 5.1); that they "maintain a clean and neat personal appearance consistent with" Flowers' public image (¶ 5.1); and that they maintain their vehicles in a similar condition (¶ 9.1). App. 38, 41-42, 67, 71-72, 98, 101-103.

*Oklahoma, Inc.,* 905 F.3d 1156, 1158 (10th Cir. 2018) (individuals required to form corporate entities to perform janitorial services could nevertheless qualify as employees); *DaSilva v. Border Transfer of MA, Inc.*, 377 F. Supp. 3d 74, 86 (D. Mass. 2019), citing *Chambers v. RDI Logistics, Inc.*, 476 Mass. 95, 109, 65 N.E.3d 1, 14 (2016) and *Depianti v. Jan-Pro Franchising Int'l, Inc.*, 465 Mass. 607, 618, 990 N.E.2d 1054, 1065 (2013) (incorporation not a bar to employee classification for purposes of the Massachusetts Wage Act).

### C. Canales and Bardzik are Engaged in Interstate Commerce Even to the Extent their Roles Involve Supervision and Management.

Canales' and Bardzik's supervisory duties are secondary to their primary role as truck drivers. A worker may have supervisory duties and yet still be engaged in interstate commerce. Indeed, even an individual whose primary duties consist of supervision can be engaged in interstate commerce under Section 1's exemption. *Saxon*, 142 S. Ct. at 1787. Saxon's duties for Southwest Airlines were "[o]stensibly meant to be purely supervisory." *Saxon*, 993 F.3d at 494. Southwest Airlines contended before the district court in that case that Saxon was actually prohibited from loading or unloading cargo except under "limited circumstances." *Saxon vs. Sw. Airlines Co.*, No. 19-CV-0403, 2019 WL 4958247 * 1 n. 2 (N.D. Ill. Oct. 8, 2019). However, because she sometimes stepped in to unload and load cargo, the Supreme Court held that Saxon was a transportation worker engaged in

24

interstate commerce.[3] *Saxon*, 142 S. Ct. at 1788. The Supreme Court devoted no meaningful attention to the question of how much time Saxon spent unloading or loading cargo, deeming it sufficient that she did it "frequently." *Id*; *see also Fraga v. Premium Retail Servs., Inc.*, No. CV 21-10751-WGY, 2022 WL 279847, at *5 (D. Mass. Jan. 31, 2022) (noting that the focus in any analysis "is not the title of the worker … but rather the actual activities" they perform).

In the instant case, Canales and Bardzik have submitted sworn affidavits (uncontested, like Saxon's) describing how they spend a minimum of fifty hours a week driving trucks distributing Flowers' goods to its customer stores. Canales and Bardzik each supervise another driver for no more than twenty to thirty hours a week, significantly less time than they spend engaged in the actual work of driving a truck and making deliveries. App. 132-133 ¶¶ 2-6 and 135-136 ¶¶ 2-6. Even that supervisory work itself should be considered engagement in interstate commerce for purposes of Section 1's exemption. *See Palcko v. Airborne Express, Inc.*, 372 F.3d 588, 593 (3d Cir. 2004); *see also Lenz v. Yellow Transp., Inc.*, 431 F.3d at 352 (supervision of transportation workers would weigh in favor of finding that a worker was exempt); *see also Zamora v. Swift Transp. Corp.*, No. EP-07-CA-

---

[3] It appears that Saxon's affidavit said she loaded or unloaded cargo three out of five days in a week, but the decisions do not elucidate whether she indicated what proportion of her time was spent doing that work. *Id*.

25

00400-KC, 2008 WL 2369769, at *7 (W.D. Tex. June 3, 2008) (finding the plaintiff's management of a trucking fleet and terminal made him a transportation worker even though he only drove a truck one to three times a year), *aff'd*, 319 F. App'x 333 (5th Cir. 2009).

Flowers insists that the focus of analysis for applying the residual exemption must be on the written "Distributor Agreements," according to which Canales and Bardzik are supposed business owners merely tasked with "overseeing" the distribution. But the Court should credit the uncontested affidavits submitted by Canales and Bardzik about the work they actually perform, rather than the text of any agreement or policy, just as the Supreme Court credited Saxon's affidavit and disregarded Southwest Airline's formal policies about ramp supervisors. *Saxon*, 142 S. Ct. at 1788. Other courts have consistently relied on such affidavits over written formalities about a worker's job responsibilities. See, e.g., *Singh v. Uber Techs. Inc.*, 939 F.3d 210, 226 (3d Cir. 2019); *Palcko*, 372 F.3d at 593; *Smith v. Allstate Power Vac, Inc.*, 482 F. Supp. 3d 40, 45 (E.D.N.Y. 2020); *Zamora*, No. EP-07-CA-00400-KC, 2008 WL 2369769, at *7. Flowers suggests the Court should ignore the affidavits in favor of the text of the Distributor Agreements but has made no serious effort to contest them. The District Court properly focused on the affidavits Canales and Bardzik submitted detailing the actual work they perform, rather than the text of the Distributor Agreements.

26

### III.   <u>Whether Flowers is Technically Part of the "Transportation Industry" does not Matter for Purposes of Section 1's Exemption, but the Nature of its Business Further Demonstrates that Canales and Bardzik are Transportation Workers.</u>

Flowers asks the Court to disregard recent precedent in this Circuit and apply a novel rule adopted by the Second Circuit in *Bissonnette*—a rule which was rejected by the Supreme Court little more than a month later.[4] *Bissonnette*, 33 F.4th 650.  In *Bissonnette*, the Second Circuit announced a requirement that a worker must be employed in the "transportation industry" to come within the scope of Section 1. *Id.* at 652.  With no support from either the text of the FAA or prior caselaw, the Second Circuit defined the "transportation industry" as one that "pegs its charges chiefly to the movement of goods or passengers, and [whose] predominant source of commercial revenue is generated by that movement." *Id*. at 656.  Applying that unprecedented definition, the court concluded that Flowers operates in "the baking industry," and therefore the workers delivering its goods were not "transportation workers" exempt from the FAA, despite being full-time commercial truck drivers. *Id*.

---

[4] After the Supreme Court's decision in *Saxon*, and following re-hearing, the Second Circuit issued a new decision with the same outcome.  *Bissonnette v. LePage Bakeries Park St., LLC*, No. 20-1681, 2022 WL 4457998 (2d Cir. 2022). The new decision is as inconsistent with the Supreme Court's holding in *Saxon* as the prior decision. *See id.* at *11 (Pooler, J., dissenting) ("From the start, this holding was textually baseless and inconsistent with the decisions of courts nationwide. Add to that list the Supreme Court.").

The Supreme Court unambiguously rejected this approach in *Saxon*. Saxon had argued for an industrywide analysis, contending that she was eligible for the exemption simply because she worked in the airline industry. As Justice Thomas wrote in his decision joined by all other participating justices, "[t]he Court of Appeals rejected Saxon's industrywide approach, and so do we." *Saxon*, 142 S. Ct. at 1788. The focus of the inquiry must be on the activity of the particular workers claiming the exemption, not any general characterization of the company for whom they work. *Id*.

The Supreme Court's rejection of an industrywide classification confirmed the correctness of the approach taken by this Court in *Waithaka*. The drivers in *Waithaka* were employed by Amazon, "one of the world's largest online retailers." *Id* at 14. Although concluding that "the nature of the business for which the workers perform their activities is important," this Court declined to categorize Amazon's "industry" and emphasized that "we do not hold that a class of workers must be employed by an interstate transportation business or a business of a certain geographic scope to fall within the Section 1 exemption." *Id*. at 23.

Without considering whether Amazon should be classified as part of "the transportation industry," the Court looked to "the objectives of the business" and whether they involve "the movement of 'persons or activities within the flow of interstate commerce.'" *Id*. at 22-23, quoting *Circuit City*, 532 U.S. at 118. The

Amazon drivers were "transportation workers" within the Section 1 exemption because when they drove trucks delivering Amazon's goods to its customers they were achieving the interstate commerce objectives of the business, even when they did not cross state lines themselves. *Id*. at 24.

Despite *Saxon* and *Waithaka*, Flowers argues that the industrywide approach follows from the same *ejusdem generis* reasoning applied by the Supreme Court in *Circuit City*.  But while the Supreme Court used that doctrine to conclude that Section 1 "exempted only contracts with transportation workers, rather than all employees, from the FAA," it does not afford any assistance in defining "transportation worker." *Saxon*, 142 S. Ct. at 1790.  In *Saxon*, the Supreme Court rejected both parties' attempts to invoke the doctrine: "Ejusdem generis neither demands nor permits that we limit a broadly worded catchall phrase based on an attribute that inheres in only one of the list's preceding specific terms." *Id*. at 1792.

Applying *Bissonnette*'s logic to the facts of *Waithaka* would have meant that the Amazon drivers could not have been transportation workers because the customers were only buying goods from Amazon, not their delivery.  It would also have produced the opposite result in *Rittmann*, 971 F. 3d at 914, and in *Int'l Broth. of Teamsters Loc. Union No. 50 v. Kienstra Precast, LLC*, 702 F.3d 954, 957 (7th Cir. 2012).  Under *Bissonnette*, a company could employ truck drivers and yet escape the Section 1 exemption as long as 51% of its revenue was derived from

29

something other than transport of goods or people. *Bissonnette*, 2022 WL 4457998 at *5.

To the extent that the nature of Flowers' business should still inform the analysis, it only further demonstrates that Canales and Bardzik are engaged in interstate commerce. *Waithaka* 966 F. 3d at 22-23. Flowers does not run a local bakery whose products are distributed to local customers. *In re Flowers Foods, Inc. Sec. Litig.*, No. 7:16-CV-222 (WLS), 2018 WL 1558558 at *2. It operates "two business segments: a direct-stores-delivery segment and a warehouse-delivery segment." *Id*. It employs thousands of delivery workers across approximately 830 routes "to deliver packaged bakery foods to its retail and foodservice customers (primarily grocery stores, mass retailers, and fast food chains) throughout the country." *Id*. As of 2018 more than a quarter of the 830 routes were operated by delivery drivers that even Flowers did not classify as independent distributors. *Id*. Flowers' subsidiaries may produce bread products, but Flowers is heavily and directly involved in transporting them across state lines.

Canales and Bardzik spend the large majority of their time driving trucks and none of it baking. "There are few classes of workers more paradigmatically 'engaged in foreign or interstate commerce'" than those who operate commercial trucks to deliver products." *Bissonnette*, No. 20-1681, 2022 WL 4457998 at *15 (Pooler, J., dissenting). The objective of Flowers' business, as it pertains to

30

Canales and Bardzik, is to ensure the transport and final distribution of Flowers' baked goods from their point of manufacture outside Massachusetts to their customer stores located in Massachusetts.

Nothing about this approach would require all of Flowers' employees to be transportation workers under Section 1 of the FAA, as Flowers implies. The Supreme Court explicitly rejected such a possibility. *Saxon*, 142 S. Ct. at 1791. Employees who actually bake Flowers' products or who work in Flowers' corporate headquarters may not be transportation workers, but Canales and Bardzik clearly are.

## **CONCLUSION**

Under *Saxon* and *Waithaka*, applying the residual clause of Section 1's exemption is straightforward: it depends on what the workers claiming the exemption actually do. No dispute exists that Canales and Bardzik transport Flowers' goods, produced outside Massachusetts for Flowers' customer stores, to Flowers' customer stores in Massachusetts. It does not matter whether Canales and Bardzik should be classified as independent contractors or employees, or whether they perform supervisory work in addition to driving trucks. Because an indispensable component of Flowers' interstate distribution system depends on their work, they are transportation workers within Section 1's exemption.

Respectfully submitted,

Plaintiffs-Appellees Margarito V. Canales and
Benjamin J. Bardzik
By their attorneys:

*/s/ Benjamin C. Rudolf*
Benjamin C. Rudolf (1st Cir. Bar No. 11454)
Sarah H. Varney (1st Cir. Bar No. 1204644)
Murphy & Rudolf, LLP
446 Main Street, Suite 1503
Worcester, MA 01608
P: (508) 425-6330
F: (508) 536-0834
brudolf@murphyrudolf.com
varney@murphyrudolf.com

Dated: October 11, 2022

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>

This brief complies with the type-volume limitation set forth in Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 7292 words, according to the Microsoft Word word-count function.  This brief complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in proportionally spaced typeface using 14-point Times New Roman font.

Respectfully submitted,

*/s/ Benjamin C. Rudolf*
Benjamin C. Rudolf (1st Cir. Bar No. 11454)
Sarah H. Varney (1st Cir. Bar No. 1204644)
Murphy & Rudolf, LLP
446 Main Street, Suite 1503
Worcester, MA 01608
P: (508) 425-6330
F: (508) 536-0834
brudolf@murphyrudolf.com
varney@murphyrudolf.com

Dated: October 19, 2022

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 19, 2022, I electronically filed the original of

the foregoing Brief of Defendants-Appellants with the Clerk of the Court using the

CM/ECF system. Notice of this filing will be sent to all attorneys of record by

operation of the Court's electronic filing system.

<div style="margin-left:40%">

Respectfully submitted,

*/s/ Benjamin C. Rudolf*
Benjamin C. Rudolf (1st Cir. Bar No. 11454)
Sarah H. Varney (1st Cir. Bar No. 1204644)
Murphy & Rudolf, LLP
446 Main Street, Suite 1503
Worcester, MA 01608
P: (508) 425-6330
F: (508) 536-0834
brudolf@murphyrudolf.com
varney@murphyrudolf.com

</div>

Dated: October 19, 2022