No. 22-1268

_____

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

_____

MARGARITO V. CANALES; BENJAMIN J. BARDZIK,

*Plaintiffs-Appellees*,

v.

CK SALES CO., LLC; LEPAGE BAKERIES; FLOWERS FOODS, INC.,

*Defendants-Appellants.*

_____

On Appeal from the United States District Court
for the District of Massachusetts, No. 1:21-cv-40065-ADB

_____

**REPLY BRIEF OF DEFENDANTS-APPELLANTS**

_____

<div style="display:flex;justify-content:space-between;">

Peter Bennett
Frederick B. Finberg
Pawel Z. Binczyk
THE BENNETT LAW FIRM, P.A.
75 Market Street, Suite 201
Portland, ME  04101

Traci L. Lovitt
Matthew W. Lampe
Jack L. Millman
JONES DAY
250 Vesey Street
New York, NY 10281
(212) 326-7830
tlovitt@jonesday.com

Amanda K. Rice
JONES DAY
150 W. Jefferson Ave.,
Suite 2100
Detroit, MI 48226

</div>

*Counsel for Defendants-Appellants*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................... ii

INTRODUCTION ................................................................................1

ARGUMENT ......................................................................................2

I.   PLAINTIFFS ARE NOT "TRANSPORTATION WORKERS"
     BECAUSE THEY ARE NOT ENGAGED IN FOREIGN OR
     INTERSTATE TRANSPORTATION.......................................................2

     A.   Plaintiffs Are Not "Primarily Devoted" To Cross-Border
          Transportation........................................................................3

     B.   There Is No Trucking "Presumption," and This Court
          Should Not Invent One...............................................................9

II.  PLAINTIFFS ARE NOT "TRANSPORTATION WORKERS"
     BECAUSE THEIR PRIMARY RESPONSIBILITY IS
     OVERSEEING ALL ASPECTS OF SALES IN THE
     TERRITORIES, NOT PERSONALLY TRANSPORTING GOODS ...........11

III. PLAINTIFFS ARE NOT "TRANSPORTATION
     WORKERS" BECAUSE THEY DO NOT WORK
     IN THE TRANSPORTATION INDUSTRY................................................14

CONCLUSION .................................................................................19

CERTIFICATE OF COMPLIANCE WITH RULE 32(a) .....................................21

CERTIFICATE OF SERVICE .............................................................22

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

C<small>ASES</small>

*Bissonette v. Lepage Bakeries Park St., LLC,*
    460 F. Supp. 3d 191 (D. Conn. 2020).......................................................8, 12, 13

*Bissonnette v. LePage Bakeries Park St., LLC,*
    33 F.4th 650 (2d Cir. 2022) ................................................................................15

*Bissonnette v. LePage Bakeries Park St., LLC,*
    49 F.4th 655 (2d Cir. 2022) .........................................................................*passim*

*Capriole v. Uber Techs., Inc.,*
    7 F.4th 854 (9th Cir. 2021) ..................................................................................6

*Circuit City Stores, Inc. v. Adams,*
    532 U.S. 105 (2001)...........................................................................1, 4, 16, 17

*Copperweld Corp. v. Indep. Tube Corp.,*
    467 U.S. 752 (1984).............................................................................................5

*Cunningham v. Lyft, Inc.,*
    17 F.4th 244 (1st Cir. 2021)........................................................................*passim*

*Freeman v. Easy Mobile Labs, Inc.,*
    No. 16-CV-00018, 2016 WL 4479545
    (W.D. Ky. Aug. 24, 2016) ...................................................................................9

*Hamrick v. Partsfleet, LLC,*
    1 F.4th 1337 (11th Cir. 2021) .....................................................................4, 9, 16

*Hill v. Rent-A-Ctr., Inc.,*
    398 F.3d 1286 (11th Cir. 2005) ...............................................................2, 13, 15

*Kowalewski v. Samandarov,*
    590 F. Supp. 2d 477 (S.D.N.Y. 2008) ...............................................................10

*Md. Cas. Co. v. Realty Advisory Bd. on Lab. Rels.,*
    107 F.3d 979 (2d Cir. 1997) ..............................................................................16

*New Prime Inc. v. Oliveira,*
    139 S. Ct. 532 (2019)....................................................................................4, 12

*Oliveira v. New Prime, Inc.,*
    857 F.3d 7 (1st Cir. 2017)...................................................................................10

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Rittman v. Amazon.com, Inc.*,
971 F.3d 904 (9th Cir. 2020) ...................................................................6

*Sw. Airlines Co. v. Saxon*,
142 S. Ct. 1783 (2022)...............................................................*passim*

*United States v. Yellow Cab Co.*,
332 U.S. 218 (1947)......................................................................5

*Waithaka v. Amazon.com, Inc.*,
404 F. Supp. 3d 335 (D. Mass. 2019)..........................................8, 10

*Waithaka v. Amazon.com, Inc.*,
966 F.3d 10 (1st Cir. 2020)........................................................*passim*

*Wallace v. Grubhub Holdings, Inc.*,
970 F.3d 798 (7th Cir. 2020) ....................................................*passim*

**STATUTES**

9 U.S.C. § 1 ...............................................................*passim*

**OTHER AUTHORITIES**

*Webster's New International Dictionary* (1922) ......................................4

## INTRODUCTION

Section 1 of the FAA carves out a "narrow" exemption for "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1; *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 118 (2001). The contracts between Flowers and T&B do not fall within that exemption for three reasons. *First*, Plaintiffs operate exclusively within the Commonwealth of Massachusetts. *Second*, Plaintiffs are franchise business owners with a wide array of rights and responsibilities that readily distinguish them from "seamen" and "railroad employees." *Third*, Plaintiffs do not work in the transportation industry. Accordingly, § 1 does not apply and the Court should enforce their arbitration agreements.

In response, Plaintiffs distort statutory text, caselaw, and the governing agreements at almost every turn. With respect to border crossings, Plaintiffs mistakenly focus on the origin of the goods (rather than the nature of their work), and invent a 10,001-pound-truck driver "presumption" that has no basis in text, precedent, or good sense. With respect to their job descriptions, Plaintiffs ignore § 1's focus on "class[es] of workers" and "contracts of employment," and seek an unprecedented expansion of § 1 to include business owners who look nothing like "seamen" and "railroad employees." And with respect to their industry, Plaintiffs do not even attempt to distinguish the Second and Eleventh Circuit's holdings—

including in a post-*Saxon* opinion involving another Flowers Independent Distributor and the same Flowers subsidiary—that "only a worker in a transportation industry can be classified as a transportation worker" under § 1. *Bissonnette v. LePage Bakeries Park St., LLC*, 49 F.4th 655, 661 (2d Cir. 2022) ("*Bissonnette II*"); *see also Hill v. Rent-A-Ctr., Inc.*, 398 F.3d 1286, 1288 (11th Cir. 2005).

Section 1 has sometimes required this Court to resolve close questions and draw difficult lines—for example, between Amazon delivery drivers on the one hand, and Lyft drivers on the other. *See Waithaka v. Amazon.com, Inc.*, 966 F.3d 10 (1st Cir. 2020) (contracts involving Amazon drivers fall under § 1); *Cunningham v. Lyft, Inc.*, 17 F.4th 244, 253 (1st Cir. 2021) (contracts involving Lyft drivers do not). This case, however, is not a close one. Franchise business owners who buy, sell, and distribute baked goods in defined intrastate territories are nothing like the "seamen" and "railroad employees" § 1 contemplates. Accordingly, the FAA applies and the Court should reverse the decision below.

## **ARGUMENT**

### I.     **PLAINTIFFS ARE NOT "TRANSPORTATION WORKERS" BECAUSE THEY ARE NOT ENGAGED IN FOREIGN OR INTERSTATE TRANSPORTATION.**

Plaintiffs do not dispute that T&B sells and distributes Flowers products in geographically defined territories that are entirely within the Commonwealth of Massachusetts. *See* App. 21 ¶ 11. Nevertheless, Plaintiffs insist that they qualify as "transportation workers" under § 1 because the baked goods they sell and distribute

were initially produced elsewhere. *See, e.g.*, Resp. Br. 8–9. Plaintiffs' position is inconsistent both with the statutory text (which focuses on workers, not goods) and with governing precedent (which distinguishes between continuous interstate journeys and discrete local travel). And this Court should decline their invitation to devise an atextual trucking "presumption" from whole cloth.

### A. Plaintiffs Are Not "Primarily Devoted" To Cross-Border Transportation.

Plaintiffs are in "the business of facilitating local, intrastate" sales and distribution, not of "mov[ing] … goods and people beyond state boundaries." *Cunningham*, 17 F.4th at 253; *see also Sw. Airlines Co. v. Saxon*, 142 S. Ct. 1783, 1789 (2022) (workers must be "directly involved in transporting goods *across state or international borders*" (emphasis added)); *Wallace v. Grubhub Holdings, Inc.*, 970 F.3d 798, 801 (7th Cir. 2020) ("interstate movement of goods" must be a "central part of [the workers'] job description"). Accordingly, Plaintiffs look nothing like the "seamen" and "railroad employees" expressly mentioned in § 1, or the airplane cargo loaders and interstate truckers that courts have found subject to the residual clause. *See* Opening Br. 20–21. And their work is even more clearly intrastate than the rideshare and food-delivery drivers that courts have found to fall outside the scope of the residual clause notwithstanding their occasional interstate trips. *See id.* at 21–22.

Contrary to Plaintiffs' repeated assertions, the fact that the baked goods that they sell and distribute were produced out of state makes no difference to the § 1 analysis. That is true for two primary reasons.

*First*, § 1 "is directed at what the class of workers is engaged in, and not what it is carrying." *Hamrick v. Partsfleet, LLC*, 1 F.4th 1337, 1350 (11th Cir. 2021). After all, "[t]he word 'workers' directs the interpreter's attention to 'the performance of work.'" *Saxon*, 142 S. Ct. at 1788 (quoting *New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 541 (2019)). And "the word 'engaged' … similarly emphasizes the actual work that the members of the class, as a whole, typically carry out." *Id.* (citing *Webster's New International Dictionary* 725 (1922)). Accordingly, courts have consistently rejected the proposition that the mere fact that goods or people previously traveled in interstate commerce is sufficient to bring the workers who later distribute those goods or transport those people within § 1. *See Wallace*, 970 F.3d at 802 ("[T]o fall within the exemption, the workers must be connected not simply to the goods, but to the act of moving those goods across state or national borders."); *Hamrick*, 1 F.4th at 1350 (fact "that the goods that are being transported have crossed state lines" is insufficient); *cf. also Circuit City*, 532 U.S. at 115–16 (holding that "interstate commerce" cannot be read to extend to "the outer limits of [Congress's] authority under the Commerce Clause"). Were it otherwise, any number of purely local workers—including, for example, the grocery-store

employees who unload and shelve incoming products—would qualify. *See* Opening Br. 28–29 (discussing the absurd consequences of that rule); *cf. Saxon*, 142 S. Ct. at 1789 ("load[ing] and unload[ing] cargo on and off planes traveling in *interstate* commerce" qualifies (emphasis added)).

*Second,* this Court and others have repeatedly distinguished between workers who are part of a continuous interstate transportation line, *see Waithaka*, 966 F.3d at 26, and those who perform discrete, intrastate trips. *See Cunningham*, 17 F.4th at 250–51 (discussing *United States v. Yellow Cab Co.*, 332 U.S. 218 (1947), overruled on other grounds by *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752 (1984)). Plaintiffs clearly fall on the intrastate side of that line. *See* Opening Br. 25–29 (discussing this case law in detail).

As the Distributor Agreements make clear, T&B buys baked goods from Flowers after the goods arrive in Massachusetts: "Title and risk of loss shall pass to DISTRIBUTOR upon delivery to DISTRIBUTOR." App. 37 ¶ 4.1; *see also* Resp. Br. 1 ("The goods are transported from Maine to Flowers' warehouse in Massachusetts, where Canales and Bardzik pick them up"). Once T&B picks up the baked goods, it owns them and bears the risk of loss with respect to them. *See* App. 37 ¶ 3.2. T&B is then obligated to use "commercially reasonable best efforts to develop and maximize the sale" of those goods within a purely intrastate territory. *Id.* at 37 ¶ 5.1 T&B, not T&B's Massachusetts customers, must "remit to [Flowers]

a full settlement of all Products and Authorized Products sold to [T&B] in the preceding week." *Id.* at 40 ¶ 8.1.  And T&B "is solely responsible for the collection of all cash sales in the Territory." *Id.* ¶ 8.2.  In short, T&B buys the baked goods from a Massachusetts warehouse and resells them at a profit exclusively within Massachusetts.

These facts readily distinguish cases like *Waithaka* and *Rittman*, where "[t]he interstate transactions between Amazon and the customer do not conclude until the packages reach their intended destinations." *Rittman v. Amazon.com, Inc.*, 971 F.3d 904, 916 (9th Cir. 2020); *see also Cunningham*, 17 F.4th at 251 (distinguishing *Waithaka* and emphasizing that Amazon had "agreed with Amazon customers to transport goods interstate from their point of origin" all the way "to the customer's home").  Here, Flowers gets paid by T&B for the goods it sells to T&B.  As a result, T&B's role in the distribution of baked goods is much more akin to the local rideshare and delivery services at issue in *Cunningham*, *Capriole*, and *Wallace*.  *See Cunningham*, 17 F.4th at 250–52; *Capriole v. Uber Techs., Inc.*, 7 F.4th 854, 863–67 (9th Cir. 2021); *Wallace*, 970 F.3d at 802.

Plaintiffs attempt to paper over the localized nature of their business by suggesting, for the first time, that T&B never actually purchases the baked goods it sells to its customers.  *See* Resp. Br. 12.  But the provision on which they rely merely clarifies that T&B does not own Distribution Rights for certain "Authorized

Products"—*i.e.*, brands that Flowers does not itself actually own. *Compare, e.g.*, App. 35 ¶ 2.3 (defining "Authorized Products" and providing that "DISTRIBUTOR does not acquire any proprietary or ownership rights to such Authorized Products" and that "COMPANY may cease selling such Authorized Products to DISTRIBUTOR upon notice, with or without cause"), *with id.* ¶ 2.2 (defining "Products" to include products that Flowers "has[] the legal right to produce and sell" and clarifying that T&B *does* own "Distribution Rights" with respect to those products). Notwithstanding the lack of an exclusive distribution right with respect to those Authorized Products, the Distributor Agreement clearly provides—under the heading "Sale of Products and Authorized Products"—that all of the goods T&B in fact distributes are "sold to DISTRIBUTOR" when they are picked up such that "[t]itle and risk of loss shall pass to DISTRIBUTOR" at the Massachusetts warehouse. *Id.* at 37 ¶ 4.1 (capitalization altered). And Plaintiffs' own affidavits confirm that that is exactly what in fact occurs. *See, e.g.*, *id.* at 9–10 ¶ 38 ("The Defendants have required the Plaintiffs to pay for all the baked product up front and controlled how much of the baked product the Plaintiffs purchased.").

Plaintiffs' remaining arguments are meritless. Plaintiffs suggest that they should be considered part of an interstate distribution system because "[a] strike by drivers such as Canales and Bardzik would 'cause a ripple effect in interstate commerce,' as much as a strike by cross-border transportation workers." Resp. Br.

12 (quoting *Waithaka v. Amazon.com, Inc.*, 404 F. Supp. 3d 335, 343 (D. Mass. 2019)).    But while Flowers recognizes that families living in Plaintiffs' Massachusetts territories would be disappointed not to find Flowers products on the shelves of their local stores, there is no reason to expect that "the effects of … a strike [by Plaintiffs] would be felt outside of their individual franchise territories within [Massachusetts]." *Bissonette v. Lepage Bakeries Park St., LLC*, 460 F. Supp. 3d 191, 202 (D. Conn. 2020), *aff'd sub nom. on rehearing*, 49 F.4th 655.    And unlike the transportation-industry strikes that prompted § 1's passage, *see* Opening Br. 38, a strike by Flowers Independent Distributors would have no tangible effect on other industries or interstate travel more broadly.

Finally, Plaintiffs make much of the facts that T&B contracted with Flowers and Flowers reserved the right to interact with T&B's customers.    *See* Resp. Br. 15–16.    But neither point makes any substantive difference.    What matters is that Plaintiffs themselves play no part in "the act of moving … goods across state or national borders."    *Wallace*, 970 F.3d at 802.    Plaintiffs purchased goods from Flowers in Massachusetts, transported them to other locations in Massachusetts, and then sold them.    That is "local delivery," not a "single interstate journey," *Cunningham*, 17 F.4th at 251; *see also Waithaka*, 966 F.3d at 26.    Accordingly, § 1 does not apply.

## B.    There Is No Trucking "Presumption," and This Court Should Not Invent One.

Unable to satisfy the interstate-transportation standard, Plaintiffs invite this Court to write a new one.  "[E]mployees of companies who use trucks weighing at least 10,001 pounds," they argue, should presumptively qualify as "transportation workers" under § 1—apparently regardless of whether they are involved in *interstate* transportation at all.  Resp. Br. 18–19.

As an initial matter, Plaintiffs do not even attempt to make a textual argument for their invented presumption.  Nor could they.  Section 1 says nothing about trucks. And it certainly does not mention 10,001 pounds—a number admittedly plucked from an unrelated statute.  *See id.* at 19 (citing the Motor Carrier Act exemption to the FLSA); *see also, e.g.*, *Freeman v. Easy Mobile Labs, Inc.*, No. 16-CV-00018, 2016 WL 4479545, at *2 n.2 (W.D. Ky. Aug. 24, 2016) ("[T]he [Motor Carrier Act] is irrelevant, however, regarding the issue of whether [a worker] is excepted from arbitration under Section 1 of the FAA."); *Hamrick*, 1 F.4th at 1349 ("[T]he purpose of the Federal Arbitration Act [is] completely different from the Fair Labor Standards Act and the Motor Carrier Act[.]").

Plaintiffs have no precedent for their presumption, either.  It is of course true that *interstate* truck drivers—regardless the size of their trucks—qualify as "transportation workers" under § 1.  And a number of cases have held as much.  *See* Resp. Br. 18 (citing cases).  But Plaintiffs identify no case endorsing a trucking

"presumption" in any form—much less one tied to the weight of any particular truck. And their proposed presumption ignores the "interstate" requirement entirely. *See, e.g.*, *Saxon*, 142 S. Ct. at 1789 (explaining that the "class of workers" must be "directly involved in transporting goods across state or international borders"). Consistent with that requirement, the area of "consensus" identified by the district court in *Waithaka* involves "'drivers actually involved in the *interstate* transportation of physical goods'"—not anyone who happens to drive a large truck. *Waithaka*, 404 F. Supp. 3d at 340 (emphasis added) (quoting *Kowalewski v. Samandarov*, 590 F. Supp. 2d 477, 483 (S.D.N.Y. 2008)); *see also id.* at 340 n.1 (discussing *Oliveira v. New Prime, Inc.*, 857 F.3d 7 (1st Cir. 2017), which involved a plaintiff "whose work … included driving a truck across state lines").

Finally, even if this Court were in the business of making up presumptions, this one is particularly nonsensical. On the one hand, workers who are "primarily devoted to the movement of goods and people beyond state boundaries," *Cunningham*, 17 F.4th at 253, qualify as "transportation workers" regardless of whether they drive a large truck, a small truck, a steamboat, an airplane, or a bicycle—and, indeed, regardless of whether they actually "drive" any vehicle at all. *See, e.g.*, *Saxon*, 142 S. Ct. at 1793 (worker who "loads and unloads cargo on and off airplanes that travel in interstate commerce" qualifies). On the other hand, workers who transport produce grown in Southern California to restaurants in

Northern California—and so have no role in the "transport[ation] [of] goods across state or international borders," *Saxon*, 142 S. Ct. at 1789—do not qualify as "transportation workers" regardless of whether they happen to drive a very large vehicle.

This Court should decline Plaintiffs' invitation to graft an atextual presumption onto § 1. Because Plaintiffs belong to a class of workers that engaged exclusively in intrastate sales and distribution, they fall outside the scope of § 1.

## II.    PLAINTIFFS ARE NOT "TRANSPORTATION WORKERS" BECAUSE THEIR PRIMARY RESPONSIBILITY IS OVERSEEING ALL ASPECTS OF SALES IN THE TERRITORIES, NOT PERSONALLY TRANSPORTING GOODS.

Even if Plaintiffs were distributing Flowers products across state lines, they still would not qualify as "transportation workers" under § 1. Section 1 sweeps in "seamen," "railroad employees," and other workers for whom "the interstate movement of goods is a central part of the class members' job description." *Wallace*, 970 F.3d at 801. It does not cover workers like Plaintiffs, who own and operate franchise businesses; who have a wide array of rights and responsibilities; and who can choose how much (if any) transportation they personally perform. *See* Opening Br. 29–34. Indeed, the only "contract of employment" at issue in this case runs to

- 11 -

T&B, and requires no specific performance of work from Plaintiffs. *See id.* at 34–36.[1]

Plaintiffs respond they should be treated as employees, or at least as independent contractors, at this stage of the litigation. Resp. Br. 19–23. But that argument is a red herring. The classification question at the heart of Plaintiffs' FLSA claim is not before this Court, and makes no difference to the § 1 inquiry in any event. *See New Prime*, 139 S. Ct. at 541–44 (holding that § 1 encompasses employees and independent contractors alike). It is the nature of their work, not their

---

[1] Plaintiffs argue that this Court should not consider the fact that the Distributor Agreements run to T&B (rather than to Plaintiffs) because Flowers did not seek to compel arbitration on that distinct basis in the District Court. *See* Resp. Br. 21. But Flowers has consistently pointed out—as the District Court recognized and Plaintiffs do not dispute—that "the Distributor Agreement is signed on behalf of T&B." Add. 3. And Flowers has consistently argued that Plaintiffs' status and relationship to Flowers as business owners, not transportation workers, controls the § 1 analysis. *See, e.g.*, D. Ct. Dkt. No. 10, at 1–6 (Mem. Supp. Defs' Mot. to Dismiss or Compel Arbitration) (discussing the formation and role of T&B); *id.* at 14 ("[B]ecause the Plaintiffs purchase and own the territories comprising their routes, their distribution efforts are the means by which they realize and increase sales and profits for their franchise businesses." (quoting *Bissonnette*, 460 F. Supp. 3d at 199)); D. Ct. Dkt. No. 24, at 5 (Defs' Resp. to Pls' Supp. Affs.) ("[D]riving is incidental to all of their other responsibilities owning and operating a business that included four territories and multiple employees.").

classification, that matters.  *See Saxon*, 142 S. Ct. at 1788 (relevant question under

§ 1 is the "work that the members of the class, as a whole, typically carry out").

"Plaintiffs' Distributor Agreements evidence a much broader scope of

responsibility that belies the claim that they are only or even principally truck

drivers." *Bissonnette*, 460 F. Supp. 3d at 199.  Indeed, "the Distributor Agreements

do not obligate Plaintiffs 'to perform any services personally,' such as driving;

instead, they grant Plaintiffs latitude in managing their businesses, 'including hiring

employees at their discretion to run their businesses.'"  *Id.*; *see* Opening Br. 30–32

(highlighting various provisions delineating Plaintiffs' management role).  And they

otherwise make clear that Plaintiffs are "more akin to sales workers or managers

who are generally responsible for all aspects of a bakery products distribution

business than they are to traditional transportation workers like a long-haul trucker,

railroad worker, or seaman." *Bissonnette*, 460 F. Supp. 3d at 200 (internal quotation

marks omitted).  Because Plaintiffs' "occupation is not defined by its engagement in

interstate commerce," Plaintiffs do not "qualify for the exemption" even though they

"occasionally perform[] that kind of work." *Wallace*, 970 F.3d at 800; *see also Hill*,

398 F.3d at 1289 (holding that § 1 does not cover "interstate transportation activity

incidental to … employment as an account manager").

Plaintiffs attempt to recharacterize their job description by pointing to their

own affidavits, which attest that they "spend most of their time driving trucks."

Resp. Br. 23; *see also id.* at 23–25. But consistent with § 1's focus on "class[es] of workers" and "contracts of employment," *Saxon* made clear that courts must assess the work that the class of workers "*as a whole*, typically carr[ies] out." *Saxon*, 142 S. Ct. at 1788 (emphasis added). An individual declaration can of course be relevant to that inquiry. But regardless of how much time Plaintiffs chose to spend driving, their Distributor Agreements, business plans, and allegations confirm that they are far more than mere truck drivers—or even mere supervisors of truck drivers, akin to the ramp supervisor in *Saxon*. Instead, they are "running a small business." App. 122; *see, e.g.*, *id.* at 90 (discussing working with customer to maximize quality of service and managing employee to ensure "the right product gets ordered, special items get set up for the weekend, and of course, have plenty of buns for the hot and beautiful summer days"); *id.* at 122 (discussing obtaining down payment for routes, purchasing vehicles, handling "taxes and vehicle maintenance," and managing employee). And that categorically distinguishes them from "seamen," "railroad employees," airplane cargo loaders, Amazon delivery drivers, and every other type of worker courts have deemed to fall within the scope of § 1.

## III. PLAINTIFFS ARE NOT "TRANSPORTATION WORKERS" BECAUSE THEY DO NOT WORK IN THE TRANSPORTATION INDUSTRY.

Finally, Flowers' Opening Brief demonstrated—as a matter of both statutory text and persuasive authority from the Second and Eleventh Circuits—that the "transportation worker[]" exemption "is limited to workers involved in the

transportation industry." *Bissonnette II*, 49 F.4th at 660; *see* Opening Br. 37–42; Chamber Br. 18–24.  Plaintiffs do not meaningfully engage with Flowers' textual argument.  They do not attempt to distinguish *Hill*, which held that § 1 did not apply to an employee of a furniture-rental company because he was "not a transportation industry worker." *Hill*, 398 F.3d at 1288.  And they certainly cannot distinguish *Bissonnette II*, which addressed *substantively identical* claims brought by a different Flowers Independent Distributor against the same Flowers subsidiary (Lepage Bakeries Park Street, LLC).  *See Bissonnette II*, 49 F.4th at 662.  Instead, Plaintiffs insist that the "transportation industry" principle is inconsistent with *Saxon*.

Just after Flowers filed its Opening Brief, the Second Circuit rejected that very argument.  The Second Circuit issued its original opinion in *Bissonnette*—the opinion Flowers cited in its Opening Brief—*before* the Supreme Court handed down its ruling in *Saxon*.  *See Bissonnette v. LePage Bakeries Park St., LLC*, 33 F.4th 650 (2d Cir. 2022) ("*Bissonnette I*").  Nevertheless, Flowers' Opening Brief demonstrated that the "transportation industry" principle that case and others espoused was entirely consistent with *Saxon*, which involved an airline employee and so simply did not address whether workers employed outside the transportation industry can qualify under § 1.  *See* Opening Br. 40–41.  And since Flowers filed that brief, the Second Circuit has revisited its initial decision in light of *Saxon* and issued a revised opinion again holding that Flowers Independent Distributors "do

not work in the transportation industry" and, as a result, "are not excluded from the FAA." *Bissonnette II*, 49 F.4th at 658, 662.

In so doing, the *Bissonnette II* court endorsed many of the same the textual, historical, and caselaw-based arguments Flowers raised in its Opening Brief. *See* Opening Br. 37–41. With respect to text, the court emphasized that § 1's references to "seamen" and "railroad employees" "are telling because they locate the 'transportation worker' in the context of a *transportation industry*." *Bissonnette II*, 49 F.4th at 660 (citing *Saxon*, 142 S. Ct. at 1791). With respect to history, *Bissonnette II* noted that the "transportation industry" principle reflected in § 1 is consistent with historical accounts of Congress's adoption of that exemption in order to avoid "unsettl[ing] established or developing statutory dispute resolution schemes covering specific workers." *Id.* (quoting *Circuit City*, 532 U.S. at 121); *see also* Opening Br. 38 (discussing this history). And with respect to caselaw, *Bissonnette II* relied on a well-developed line of Second and Eleventh Circuit authority "adumbrat[ing] the principle … that the FAA exclusion is limited to workers involved in the transportation industry." *Bissonnette II*, 49 F.4th at 660–61 (citing, *e.g.*, *Md. Cas. Co. v. Realty Advisory Bd. on Lab. Rels.*, 107 F.3d 979 (2d Cir. 1997), and *Hamrick*, 1 F.4th 1337).

The Second Circuit concluded, moreover, that the "transportation industry" principle is entirely consistent with *Saxon*. "That point [simply] needed no

elaboration in *Saxon* because there the plaintiff worked for an airline"—and so was indisputably part of the transportation industry. *Id.* at 661. To be sure, *Saxon* further "teaches[] [that] not everyone who works in a transportation industry is a transportation worker." *Id.* *That* is the "industrywide approach" *Saxon* rejected. *Saxon*, 142 S. Ct. at 1788. But "the distinctions drawn in Saxon" *among* transportation industry workers "do not come into play" where, as here, an individual works in a different industry entirely. *Bissonnette II*, 49 F.4th at 661.

In nevertheless arguing that *Saxon* somehow rejected the "transportation industry" principle, Plaintiffs point out that "[i]n *Saxon*, the Supreme Court rejected both parties' attempts to invoke" the *ejusdem generis* canon from which that principle derives. Resp. Br. 29. But *Saxon*, like *Circuit City*, actually embraced that canon. *See* 142 S. Ct. at 1789 (citing *Circuit City*, 532 U.S. at 115–16). It simply recognized that "*[e]jusdem generis* neither demands nor permits that we limit a broadly worded catchall phrase based on an attribute that inheres in only *one* of the list's preceding specific terms." *Id.* at 1792 (emphasis added). And unlike the *ejusdem generis* arguments the Court rejected in *Saxon*, the "transportation industry" principle reflects *both* of the statute's enumerated examples. *See Bissonnette II*, 49 F.4th at 660; *see also Waithaka*, 966 F.3d at 23 ("Plainly, these groups, defined by the nature of the business for which they work, demonstrate that the activities of a

company are relevant in determining the applicability of the FAA exemption to other classes of workers.").

Finding no purchase in *Saxon*, Plaintiffs insist that this Court actually rejected the "transportation industry" principle in *Waithaka*. *See* Resp. Br. 28–30. But *Waithaka* expressly recognized that "[t]he nature of the business for which a class of workers perform their activities must inform [the § 1] assessment." 966 F.3d at 22. And in so doing, this Court relied on the same *ejusdem generis* reasoning the Second Circuit used in *Bissonnette II*. *See id.* at 23 (reasoning that "seamen" and "railroad employees" are "groups[] defined by the nature of the business for which they work").

To be sure, *Waithaka* did not go so far as to "hold that a class of workers *must* be employed by an interstate transportation business" to fall under § 1. *Id.* (emphasis added). But because Amazon never raised the "transportation industry" principle in *Waithaka* (and, indeed, effectively argued just the opposite), this Court simply had no occasion to do so in that case. *See id.* at 22 (addressing *Amazon's* argument that the "geographic footprint and nature of the business for which [its drivers] work" was *irrelevant* to the § 1 analysis); Appellants' Br., *Waithaka*, 966 F.3d 10 (No. 19-1848), 2019 WL 6114810 (making no "transportation industry" argument); Resp. Br. 28 (acknowledging that this Court never "consider[ed] whether Amazon should be classified as part of 'the transportation industry'"). Flowers respectfully submits

that this Court should take that opportunity now.  At the very least, however, *Waithaka* confirms that "the nature of [Flowers'] business … is important" to (if not dispositive of) the § 1 analysis.  966 F.3d at 23.

Finally, Plaintiffs take a swipe at the Second Circuit's definition of "transportation industry" as one that "pegs its charges chiefly to the movement of goods or passengers, and [whose] predominant source of commercial revenue is generated by that movement." *Bissonnette II*, 49 F.4th at 661; *see* Resp. Br. 27.  But the Second Circuit's analysis merely reflects a commonsense explication of what shipping companies ("seamen") and railroads ("railroad employees") have in common.  And while Plaintiffs are of course correct that Flowers is involved in the distribution of the goods it produces, they make no serious argument that Flowers has anything in common with shipping companies and railroads—or is otherwise part of the "transportation industry," however defined.

## <u>CONCLUSION</u>

Plaintiffs do not qualify as "transportation workers" under § 1 because (1) they are not involved in cross-border transportation; (2) they are franchise business owners, not mere truck drivers; and (3) they do not work in the transportation industry.  Each of those points is independently sufficient to bring Plaintiffs within the scope of the FAA.  And taken together, they confirm that Plaintiffs look nothing

like the "seamen" and "railroad employees" § 1 was designed to capture.  The Court

should vacate the district court's order and remand for further proceedings.


Dated: November 9, 2022                    Respectfully Submitted,

                                           */s/ Traci L. Lovitt*
Peter Bennett                              Traci L. Lovitt
Frederick B. Finberg                       Matthew W. Lampe
Pawel Z. Binczyk                           Jack L. Millman
THE BENNETT LAW FIRM, P.A.                 JONES DAY
75 Market Street, Suite 201                250 Vesey Street
Portland, ME  04101                        New York, NY 10281
                                           (212) 326-7830
                                           tlovitt@jonesday.com

                                           Amanda K. Rice
                                           JONES DAY
                                           150 W. Jefferson Ave.,
                                           Suite 2100
                                           Detroit, MI 48226

              *Counsel for Defendants-Appellants*

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>

This brief complies with the type-volume limitation set forth in Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 4636 words, excluding the parts of the brief exempted by Rule 32(f) and 6 Cir. R. 32(b)(1), as counted using the word-count function on Microsoft Word 2016 software.

This brief complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in proportionally spaced typeface using Microsoft Word 2016, in Times New Roman style, 14 point font.

 Dated:  November 9, 2022          Respectfully submitted,

                                   */s/ Traci L. Lovitt*
                                   Traci L. Lovitt

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 9, 2022, I electronically filed the original of the foregoing Reply Brief of Defendants-Appellants with the Clerk of the Court using the CM/ECF system.  Notice of this filing will be sent to all attorneys of record by operation of the Court's electronic filing system.


 Dated:  November 9, 2022            Respectfully submitted,

                                     */s/ Traci L. Lovitt*
                                     Traci L. Lovitt